IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA – ATLANTA DIVISION

ANDREW DEGAN AND
KAILYNNE DEGAN,

Plaintiffs,

—v—

FIVE STAR DODGE, INC.; CAPITAL ONE NA, INC;
EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION
LLC; and EXPERIAN INFORMATION SOLUTIONS, LLC

Defendants.

CIVIL ACTION NUMBER

JURY TRIAL DEMANDED

## COMPLAINT

COME NOW by counsel your plaintiffs, Andrew and Kailynne Degan, (hereafter, 'Plaintiffs' or ' the Degans') and for their *Complaint* for violation of the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq*, against Capital One NA, Inc; Equifax Information Services, LLC; Transunion, LLC; and Experian Information Services, LLC; for unfair and deceptive practices in the sale of a motor vehicle in violation of the Fair Business Practices Act, OCGA § 10-1-390 *et seq* (hereafter, 'FBPA'); for breach contract and breach of warranty of title; and for failure to honor Plaintiff's revocation of acceptance of an automobile; against Five Star Dodge, Inc., and Capital One NA, Inc.; and show the following:

I. Introduction to the Facts

1.

The Plaintiffs bring this action under the FCRA, 15 USCS § 1681 *et seq.*

2.

Plaintiff brings this action under the FBPA, OCGA § 10-1-390 *et. seq.*

3.

Plaintiff brings this action for breach of contract for a licensed automobile dealer's failure to timely convey title in contravention of O.C.G.A § 11-2-312(1)(a) and OCGA § 40-3-33(c).

4.

Plaintiff brings this action against Defendant to recover damages for Defendant's refusal to return monies paid by the plaintiff after a revocation of acceptance under Georgia's Uniform Commercial Code, OCGA § 11-2-608.

5.

Defendant Five Star Dodge violated the FBPA by each of the following acts or omissions: (1) Defendant Five Star Dodge represented to Plaintiffs that it would convey title to a 2016 Dodge Journey, VIN # 3C4PDCEG4GT220488 (hereafter, 'the Journey') within thirty (30) days of delivery, but, at the time of the representation, could not do so; (2) Defendant Five Star Dodge represented to Plaintiffs that they could use dealer tags on the Journey to legally drive it, when

doing so is not permissible under Georgia Law or the Uniform Code of Military Justice to which Plaintiff Andrew Degan is subject; (3) Defendant failed to transfer title to the Journey to Plaintiff within thirty (30) days as required by law and in fact only transferred title after Plaintiffs revoked acceptance; (5) Defendant failed to honor Plaintiff's valid revocation of acceptance.

6.

Defendant Capital One Auto Finance violated the FBPA by each of the following acts or omissions: (1) telling Plaintiffs they should contact a lawyer and rescind the purchase contract on the Journey; then failing to communicate with Plaintiffs' lawyer; (2) failing to honor the Plaintiffs' defense against the debt Capital One alleges to exist between Plaintiffs and Capital One, even though the Plaintiffs have every defense against the alleged debt that they have against the underlying contract; (3) reporting the alleged debt to consumer credit reporting agencies as delinquent, even when they knew the information was incorrect; (4) failing to honor Plaintiffs' valid termination of security interest under OCGA 11-9-513(b), and to otherwise honor Plaintiffs' revocation of acceptance, even after instructing Plaintiffs to find legal counsel to enforce their rights against Defendant Five Star for Five Star's failure to timely convey title; (5) additionally, Plaintiffs bring as defense against Capital One NA's claim of indebtedness, all defenses that

they have against Defendant Five-Star, pursuant the FTC "Holder" rule, 16 CFR §

433.

## II. INTRODUCTION TO APPLICABLE LAW

## A. THE FBPA

### 7.

A Georgia remedial statute, the express purpose of the FBPA is not merely

to give a remedy to an aggrieved consumer, but also to prevent and deter unfair

and deceptive practices in the consumer marketplace, thereby protecting businesses

from gaining unfair advantage over each other and preserving the public faith in

the consumer marketplace. OCGA § 10-1-391(a); see Zeeman v. Black, 156 Ga.

App. 82, 84 (1980) (finding that the purpose of the FBPA is the protection of

consumers generally, not merely the provision of an additional remedy for private

wrongs). If the consuming public is benefitted, "[A] single instance of an unfair or

deceptive act or practice is a sufficient predicate upon which to bring a claim for

damages. . .". Id at 86.

### 8.

A consumer has a right to recover under the FBPA regardless of any other

theory of recovery. Attaway v. Tom's Auto Sales, Inc., 144 Ga. App. 813, 815

(1979).

9.

Unfair and deceptive acts in violation of the FBPA may be proved by

circumstantial evidence, and whether the operative facts and circumstances

establish actionable fraud is a question of fact to be decided by a jury. <u>Marshall v.</u>

<u>W.E. Marshall Co.</u>, 189 Ga. App. 510, 513, 376 S.E.2d 393 (1988).

10.

Remedies are cumulative under the FBPA, and the liberal construction

requirement of the FBPA has allowed Georgia consumers to recover exemplary

and treble actual damages, in addition to all other remedies (including costs and

attorneys' fees) when an automobile dealership has been found liable for

constructive (not necessarily intentional) fraud. <u>Paces Ferry Dodge, Inc. v.</u>

<u>Thomas</u>, 174 Ga. App. 642-44, 331 S.E. 2d 5-7 (1985).

B. REVOCATION OF ACCEPTANCE

11.

A buyer may revoke acceptance of a non-conforming good where the

nonconformity substantially impairs the value to her if she has accepted it on the

assumption that its nonconformity would be cured, and a buyer who so revokes has

the same rights and duties with regard to the goods involved as if she rejected

them. OCGA § 11-2-608(1)(a), -(3).

12.

The condition precedent for a claim for damages based on revocation of acceptance is the buyer giving notice to the seller of the revocation within a reasonable time and before the condition of the goods changes substantially from unrelated causes. OCGA § 11-2-608(2).

13.

The buyer does not need to tender non-conforming goods as a condition precedent to a claim based on revocation of acceptance. Mauk v. Pioneer Ford Mercury, 308 Ga. App. 864, 870 (2011).

14.

Revocation is available as a remedy even when a seller has attempted to limit its warranties. Jacobs v. Metro Chrysler-Plymouth, 125 Ga. App. 462 (1971).

15.

"[I]ssues such as whether an effective revocation of acceptance was made, whether reasonable notice of revocation was given to the seller, and whether the value of the goods was substantially impaired are ordinarily matters for determination by the trior of fact, even where the buyer has continued to use nonconforming goods after an alleged revocation of acceptance." Mauk, 308 Ga.

App. At 370; <u>Hub Motor Co. v. Zurawski</u>, 157 Ga. App. 850 (1981); <u>Jacobs</u>, 125 Ga. App. 462 (1972); <u>Trailmobile Div. of Pullman v. Jones</u>, 118 Ga. App. 472 (1968).

## C. Breach of Contract & Warranty of Title

16.

Georgia's Uniform Commercial Code provides, in relevant part, that "there is in a cont"act for sale a warranty by the seller that... the title conveyed shall be good, and its transfer rightful" OCGA § ll-2-312(l)(a). "Between a buyer an" a merchant seller of goods there is a warranty of title." <u>Oden & Sims Used "ars, Inc. v. Thurman</u>. 165 Ga. App. 500, 500 (1983).

17.

Georgia's Motor Vehicle Certificate of Title Act provides also that "The dealer shall submit a properly completed certificate of title application and proper supporting documents to the commissioner or to the appropriate authorized county tag agent so that the application and supporting documents shall be submitted to the commissioner or the appropriate authorized county tag agent within 30 days from the date of the transfer of the vehicle. " OCGA § 40-3-33(c)" *See* Ga. Comp. R. & Regs. R. 681-9.02(g-h).

18.

Licensed Used Motor Vehicle Dealers and each of their places of business are specifically directed by state regulations to comply with all local, state, and federal laws when operating their businesses. *See* Ga. Comp. R. & Regs, r.681-9-.01 and -.02.

19.

All persons – including used motor vehicle dealers – have a general duty to obey the law.

III. Parties

A. Plaintiffs

20.

Andrew Degan is a natural person.

21.

Andrew Degan is a member of the active duty United States Armed Forces; specifically, the United States Air Force.

22.

Kailynne Degan is a natural person.

23.

Andrew Degan and Kailynne Degan are both *consumers* as defined by the FBPA, OCGA § 10-1-392(6).

24.

Andrew Degan and Kailynne Degan are both *consumers* as defined by 15 U.S.C. § 1681a(c).

B. DEFENDANT FIVE STAR DODGE, INC.

25.

Defendant Five Star Dodge, Inc., (hereafter, 'Five-Star') is a Corporation organized for profit under the laws of Georgia.

26.

Five Star's Principal address, according to the Defendant's representations to the Georgia Secretary of State, is located at 3068 Riverside Drive, Macon, Georgia 31210-2512.

27.

Five Star's principal place of business is located in Bibb County, Georgia.

28.

Five-Star can be served with process through Five Star's registered agent, which Five-Star represented to the Georgia Secretary of State to be Charles Lee Cantrell, 3068 Riverside Drive, Macon, Georgia 31210. **See, Exhibit "A".**

29.

Five-Star's registered agent is located in Bibb County, Georgia.

30.

Five-Star is a *Dealer* under OCGA § 49-1-1(11).

## C. DEFENDANT CAPITAL ONE AUTO FINANCE

31.

Defendant Capital One Auto Finance (hereafter, 'Capital One') is a division of Capital One, NA, a Corporation organized for profit under the laws of Delaware.

32.

Capital One maintains a registered agent in the state of Georgia, which it has represented to be Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

33.

Capital One can be served with process through Capital One's registered agent.

## D. DEFENDANT EQUIFAX

34.

Defendant Equifax Information Services LLC is a credit bureau doing business in Georgia and is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

35.

Defendant Equifax has represented to the Georgia Secretary of State that its registered agent for service of process in Georgia is Lisa Stockard, who can be served with process at 1550 Peachtree Street NW, Atlanta, GA 30309.

E. DEFENDANT TRANS UNION LLC

36.

Defendant Trans Union LLC is a credit bureau doing business in Georgia and is a "consumer reporting agency" under 15 U.S.C. § 1681(a)(f).

37.

Defendant Trans Union has represented to the Georgia Secretary of State that its registered agent for service of process in Georgia is Prentice-Hall Corporation Syst, who can be served with process at 40 Technology Parkway South No. 300, Norcross, GA 30092.

F. DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.

38.

Defendant Experian Information Solutions, Inc., ("Experian") is a credit bureau doing business in Georgia and is a "consumer reporting agency" under 15 U.S.C. § 1681(a)(f).

39.

Defendant Experian has represented that its registered agent for service of process in Georgia is CT Corporation System, 289 S Culver St., Lawrenceville, GA, 30046.

## IV. JURISDICTION AND VENUE

40.

Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 28 U.S.C. § 1367 for pendant state law claims.

41.

This Court has subject matter jurisdiction over claims under the FCRA, invoking Federal Question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

42.

This Court has supplemental jurisdiction with regard to Plaintiff's pendent state law claims under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

43.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

44.

Venue is proper in this Court because Defendants Experian, Equifax, Transunion, and Capital One all maintain registered offices and have registered agents who can be served with process in this district.

V. OPERATIVE FACTS

45.

In search of a reliable car, The Degans contacted Five-Star in August of 2019. The Degans explained that they needed a reliable vehicle for personal, family, and household purposes.

46.

The Degans explained that Plaintiff Andrew Degan was a memer of the active duty Air Force and that they lived on Warner Robins Air Force Base.

47.

Five-Star showed the Journey to the Degans.

48.

On or about August 16, 2019, the Degans contracted to purchase the Journey, and at the same time applied for financing through Five-Star.

49.

A few days later, Five Star affixed a temporary vehicle registration tag to the Journey, and the Degans took delivery of it.

50.

After the Degans took delivery of the Journey, Five-Star assigned the loan for the Journey to Capital One Auto Finance, and the loan was funded on or about August 22, 2019.

51.

On September 17, the Degans received a second set of temporary tags from the Georgia Department of Motor Vehicles, which would expire on October 31, 2019.

52.

On September 30, 2019, the original temporary tag expired. Plaintiffs could not obtain permanent tags because Five-Star had not yet conveyed title.

53.

On September 27, 2019, Plaintiffs contacted the Georgia Department of Motor Vehicles (hereafter, 'DMV'), which informed them that as of that date, there was no title.

54.

On October 1, 2019, Five-Star represented to Plaintiffs over the telephone that Five-Star had received the lien release from the previous lienholder.

55.

On October 3, 2019, Five-Star represented to plaintiffs over the telephone that Five-Star had filed for a duplicate title in Ohio.

56.

On October 15, 2019, Plaintiffs contacted both DMV and Capital One.

57.

In the October 15, 2019 phone call, DMV informed Plaintiffs that no application for title or registration had yet been filed for the Journey in Georgia.

58.

In the October 15, 2019 phone call, Capital One told Plaintiffs that they should contact Five-Star <u>and a lawyer</u>.

59.

At the time of the phonecall referenced in ¶ 48, Capital One knew that the Degans were entitled to rescission and/or revocation of acceptance and that Five Star had failed to comply with the law.

60.

On or about October 15, 2019, Capital One communicated with Five-Star.

61.

After the October 15, 2019 communication between Capital One and Five-Star, Plaintiffs contacted the manager at Five-Star by telephone.

62.

In the telephone call referenced in ¶ 50, Five-Star told the Plaintiffs that after the second temp tag expired, Five-Star would give the Plaintiffs dealership plates, so they could enter Warner Robins Air Force Base.

63.

Driving a vehicle with false registration on Warner Robins Air Force Base would violate AFI 31-218. Plaintiff Andrew Degan could be punished under the Uniform Code of Military Justice for such a violation.

64.

Plaintiffs declined Five-Star's offer of dealership plates and told Five-Star that if the Journey was not properly titled when the second set of temporary tags expired, they were cancelling the sale. Five-Star told Plaintiffs "it wasn't going to happen."

65.

Plaintiffs contacted dealer once weekly until the second set of temporary tags expired.

66.

On October 23, 2019, consistent with Capital One's advice, Plaintiffs engaged Divis Law LLC to assist them.

67.

On October 31, 2019 the second set of temporary tags expired – more than sixty (60) days after the Plaintiffs took delivery of the Journey. At this time, Plaintiffs could not take the Journey onto the military installation where they live and where Plaintiff Andrew Degan works.

68.

On November 1, 2019, by counsel, the Plaintiffs sent a letter – a Fair Business Practices Act ante-litem demand – to Five Star (hereafter, 'Five-Star demand'). The letter noticed Five Star and Capital One that the Plaintiffs had cancelled the sale and revoked acceptance of the Journey. The letter tendered the Journey to Five-Star. The letter contained a spoliation notice. **See, Exhibit "A".**

69.

On November 4, 2019, by counsel, the Plaintiffs sent to Capital One a letter demanding termination of the security interest in the Journey (hereafter, 'Capital One demand'). The letter to Capital One contained affidavits to support the Plaintiffs' demand; and a copy of the Fair Business Practices Act ante-litem demand that was sent to Five-Star. The letter demanded termination of the security interest, consistent with the Plaintiffs' cancellation of the sale. **See, Exhibit "B".**

70.

On November 7, 2019, Five-Star received the Five-Star Demand.

71.

On November 18, 2019, Capital One received the Capital One Demand.

72.

On November 21, 2019, Plaintiffs received via Federal Express Overnight a set of license plates and a vehicle registration for the Journey. The same day, Plaintiffs' counsel received copies of the same via USPS Express Mail. Enclosed with the copy sent to Plaintiffs' counsel was a brief letter indicating that the vehicle was now registered to the Plaintiffs. **See, Exhibit "C"**.

73.

On or about December 2, 2020, Plaintiffs' counsel received a letter from Capital One, indicating that Plaintiffs must provide written authorization for Capital One to speak with Plaintiffs' counsel, and instructing Plaintiffs' counsel to send this authorization by fax. **See, Exhibit "D"**.

74.

The same day, Plaintiffs signed, and plaintiffs' counsel faxed to Capital One written authorization for Capital One to speak to Plaintiffs' counsel. **See, Exhibit "E"**.

75.

The fax was received by Capital One. **See, Exhibit "E"**.

76.

On December 7, 2019, Plaintiffs' counsel dispatched to Five-Star a letter

dated December 6, 2019 indicating that Plaintiffs had revoked acceptance and

canceled the sale of the Journey before Five-Star registered the Journey to them,

again tendering the Journey to Five-Star. **See, Exhibit "F"**.

77.

Five-Star did not respond within 30 days and comply with the demand in

Plaintiff's Five-Star Demand.

78.

Capital One did not respond and terminate the security interest in the

Journey by November 24, 2019.

79.

On December 7, 2019 Plaintiffs' counsel dispatched a letter, dated

December 6, 2019, to Capital One, repeating Plaintiffs' position, disputing the debt

that Capital One alleged Plaintiffs owed to Capital One, and asking Capital One to

clarify its position. Plaintiffs dispatched this letter via regular mail, certified mail,

and fax. **See, Exhibit "G".**

80.

On December 30, 2019, Plaintiffs' counsel received a letter, dated December

17, 2019, stating that Capital One would like to speak with Plaintiffs' counsel and

help, but could not do so because it lacked written authorization from Plaintiffs;
and that if Capital One did not hear from Plaintiffs' counsel within ten (10) days of
the date on the letter (which had already passed), it would consider the matter
resolved. **See, Exhibit "H"**.

81.

On December 31, 2019, Plaintiffs' counsel dispatched to Capital One at the
numbers and address provided by Capital One, using fax, certified mail with return
receipt, and regular 1st class mail, a letter explaining that Plaintiffs' counsel had
already sent the requested written authorization; and sent copies of all prior
correspondence, and the send receipt from the transmission of the written
authorization by fax on December 2, 2019; indicating that the matter was not
resolved; again indicating that Plaintiffs disputed the alleged debt; and instructed
Capital One not to report any derogatory information to any credit reporting
agency. **See, Exhibit "I"**.

82.

On January 8, 2019, Plaintiffs received an acceleration notice from Capital
One, which makes no reference of any of the prior correspondence, or the
controversy surrounding the Journey. **See, Exhibit "J"**.

83.

Capital One did not send this letter to Plaintiffs' counsel, even though Capital One knew Plaintiffs were represented by counsel.

84.

Sometime after this, Capital One reported derogatory information about the Plaintiffs to Equifax, Experian, and Transunion.

85.

Equifax, Experian, and Transunion then published the derogatory information that Capital One reported in Plaintiffs' consumer credit reports. **See, Exhibit "K".**

86.

On or about January 22, 2020, Plaintiffs disputed the derogatory information that Capital One reported by sending certified mailings to Equifax, Experian, and Transunion, all of which were appropriately received. **See, Exhibit "L".**

87.

Equifax and Experian promptly responded to Plaintiffs that the information reported was correct and would remain. **See, Exhibit "M".**

88.

On or about February 22, 2020, Plaintiffs again disputed the derogatory information that Capital One reported by sending certified mailings to Equifax,

Experian, and Transunion, all of which were appropriately received. In their second dispute letter, Plaintiffs articulate their position that they validly rescinded the underlying contract for the purchase of the Journey, on Capital One NA's own advice to Plaintiffs that they consult an attorney to enforce their rights against Five Star. **See, Exhibit "N".**

89.

Equifax, Experian, and Transunion again promptly responded to Plaintiffs that the information reported was correct and would remain. **See, Exhibit "O".**

90.

The derogatory information reported by Capital One NA to Equifax, Experian, and Trans Union was false.

91.

Capital One NA knew the information reported was false.

92.

Upon Plaintiff's request for verification and deletion of the information reported by Capital One, and in accordance with its standard procedures, Equifax, Experian, and Trans Union did not evaluate or consider any of Plaintiff's information, claims, or evidence and did not make any attempt to substantially or reasonably verify the Capital One representations.

93.

In the alternative to the allegation that Equifax, Experian, and Trans Union failed to contact Capital One, it is alleged that Equifax, Experian, and Trans Union did forward some notice of the dispute to Capital One and Capital One failed to conduct a lawful investigation.

COUNT I – FCRA – AGAINST CAPITAL ONE, EQUIFAX, EXPERIAN, AND TRANS UNION

A. AGAINST EQUIFAX, EXPERIAN, AND TRANS UNION

94.

The Degans by this reference incorporate as if fully set forth here the allegations set forth, described, and contained in numbered paragraphs #1 through #93 of this *Complaint*.

95.

Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

96.

In the alternative, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful

reinvestigation; by failing to forward all relevant information to Capital One; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

97.

As a result of this conduct, action and inaction of Equifax, Experian, and Trans Union, the Plaintiffs have suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

98.

Equifax's, Experian's, and Trans Union's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

99.

The Plaintiffs are entitled to recover costs and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

B.  AGAINST CAPITAL ONE

100.

The Degans by this reference incorporate as if fully set forth here the allegations set forth, described, and contained in numbered paragraphs #1 through #99 of this *Complaint*.

101.

Capital One published the Capital One NA representations to Equifax, Experian, and/or Trans Union and through Equifax, Experian, and/or Trans Union to all of Plaintiff's potential lenders on multiple occasions, including but not limited to any response to Equifax, Experian, and/or Trans Union published just prior to January 22, 2020, (the "Defamation").

102.

The Defamation was willful and with malice. Capital One did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the Defamation. It also had substantial evidence by which to have verified that the Plaintiff had rescinded the underlying contract in  this case, together with its financing agreement, because Plaintiffs originally obtained legal counsel to help them rescind when Capital One urged them to do so. Capital One willfully determined to follow procedures which did not review, confirm or verify

the substance or content of the Plaintiffs' claims. Further, Capital One's failure to respond to Plaintiffs' attempts to communicate through counsel evidence bad faith.

103.

As a result of this conduct, action and inaction of Capital One, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

104.

The Defamation conduct and actions of Capital One were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Capital One in an amount to be determined by the Court.

## COUNT II – FBPA – AGAINST CAPITAL ONE AND FIVE STAR

105.

The Degans by this reference incorporate as if fully set forth here the allegations set forth, described, and contained in numbered paragraphs #1 through #104 of this *Complaint*.

106.

Defendants' acts and omissions as alleged constitute violations of the Fair Business Practices Act, including OCGA § 10-1-393(b)5 and (b)(7).

107.

Defendants' conduct was willful, wanton, malicious, with intent to defraud, and was outrageous by reason of conscious indifference to or reckless disregard for the safety and rights of the Plaintiff and others, and was without just cause or excuse.

108.

Defendants knew the Degans were entitled to revoke acceptance and intentionally represented that they could not do so.

109.

Defendants knew they were required to convey title in thirty (30) days but told Plaintiffs it was permissible to do so more than ninety (90) days later.

110.

Defendants knew it was illegal under both Georgia and military law for the Plaintiffs to drive with dealer license plates, but offered them anyway, instead of accepting the Plaintiffs' request to cancel the sale.

111.

Defendants knew that Plaintiffs' revocation of acceptance severed Defendants power to convey title to Plaintiffs, but conveyed title to Plaintiffs anyway.

112.

Defendant Capital One received authorization to speak to Plaintiffs' counsel, but told Plaintiffs through Plaintiffs' counsel it had not received authorization.

113.

Defendants refused to honor Plaintiffs' revocation of acceptance.

114.

Defendant Capital One refused to terminate the security interest in the Journey, even though Plaintiffs had properly demanded termination.

115.

Defendant Capital One acted unfairly when it told the Degans to retain counsel, and then would not timely communicate with their counsel.

116.

As a proximate and consequent result of Defendants' unfair and deceptive acts and practices and misrepresentations, the Degans have been actually damaged in an amount to be proven at trial, plus expenses, the cost of bringing this action, and reasonable attorneys' fees as of the filing of this *Complaint*.

COUNT III – REVOCATION OF ACCEPTANCE – AGAINST CAPITAL ONE AND FIVE STAR

117.

The Degans by this reference incorporate as if fully set forth here the allegations set forth, described, and contained in numbered paragraphs #1 through #116 of this *Complaint*.

118.

Because the Plaintiffs could not drive the Journey to or around their home, at the time they revoked acceptance of the Journey, the Degans were unable to use the Journey for the purposes for which they bought it.

119.

The inability of Five-Star to convey title substantially impaired its value to the Degans, who believed Five-Star would convey title within thirty (30) days, not in excess of ninety (90).

120.

Although the Degans revoked their acceptance of the Journey by communicating their revocation to Defendants, Defendants failed and refused to honor the Degans' revocation of acceptance, in violation of OCGA § 11-2-608.

121.

As a result of Defendants' failure to honor The Degans' revocation of acceptance, the Degans sustained losses and damages as alleged herein. As a

proximate and consequent result of Defendants' unfair and deceptive acts and practices, the Degans have been damaged in an amount equal to all monies paid for the Journey, plus expenses, the cost of bringing this action, and reasonable attorneys' fees as of the filing of this *Complaint*; relief from future payments; and deletion from the Degans consumer credit reports of the tradeline associated with this transaction.

COUNT IV – BREACH OF CONTRACT – AGAINST CAPITAL ONE AND FIVE STAR

122.

The Degans by this reference incorporates as if fully set forth here the allegations set forth, described, and contained in numbered paragraphs #1 through #121 of this *Complaint*.

123.

Five-Star represented to the Degans that Five-Star would convey title to the Journey to the Degans within thirty (30) days of delivery of the Journey.

124.

Five-Star did not convey title to the Journey to the Degans within thirty (30) days of the sale of the Journey.

125.

Five-Star did not convey title to the Journey within ninety (90) days of the sale of the Journey.

126.

Five-Star did not convey title to the Journey before the Plaintiffs retained counsel, revoked acceptance, and demanded the sale cancelled.

127.

Without title, the Degans could not legally operate the Journey; nor drive it to or around their home.

128.

Without title, the Journey had no value to the Degans.

129.

Although the Degans revoked their acceptance of the Journey by communicating their revocation to Defendants, Defendants failed and refused to honor the Degans' revocation of acceptance, in violation of OCGA § 11-2-608.

130.

Although the Degans notified Defendants of Defendant Five-Star's breach of OCGA § 40-3-33(c), Defendants refused to cancel the contract for the sale of the Journey, refused to accept tender of the Journey back to Five-Star, refused to return to the Degans any monies paid for the Journey, and refused to grant the Degans relief from future payments.

131.

As a result of Defendants' failure to honor the Degans' revocation of acceptance for breach contract, the Degans sustained losses and damages as alleged herein. As a proximate and consequent result of Defendants' unfair and deceptive acts and practices, the Degans have been damaged in an amount to be proven at trial, plus the cost of bringing this action, and reasonable attorneys' fees.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. A judgment in the amount equal to all monies paid for the Journey.

B. Actual damages under the FBPA.

C. Treble actual damages for intentional violation of the FBPA

D. Exemplary damages as provided by the FBPA.

E. Reasonable costs and attorney's fees under the FBPA.

F. Relief from future payments.

G. A declaratory judgment that Defendants' conduct violated the FBPA.

H. A declaratory judgment that Plaintiffs' cancellation of the sale of the Journey was effective.

I. Actual and Statutory damages under the FCRA.

J. Exemplary damages as provided by the FCRA.

K. Reasonable costs and attorney's fees under the FCRA.

L. A declaratory judgment that Defendants' conduct violated the FCRA.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands trial by jury in this action.


Respectfully submitted this 10th day of September 2020.


/s/ Robert Divis                                  /s/ Clifford Carlson
Robert A. Divis                                   Clifford Carlson
GA Bar #645114                                    GA Bar #227503
*Attorney for Plaintiffs*                         *Co-Attorney for Plaintiffs*

**DIVIS LAW LLC**                                 **CLIFF CARLSON LAW, P.C.**
P.O. Box 27584                                    1114-C1 Highway 96 #347
Macon, GA 31221                                   Kathleen, GA 31047
P: (478) 338-9144                                 P: (478) 254-1018
F: (478) 845-2653                                 F: (478) 254-1018
E: robert@divislaw.com                            E: cc@cliffcarlsonlaw.com