IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANDREW DEGAN, and
KAILYNNE DEGAN,

                    Plaintiffs,

        v.

FIVE STAR DODGE, INC., and
CAPITAL ONE NA, INC.,

                    Defendants.

CIVIL ACTION NO.

1:20-cv-03755-MHC-RGV

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Plaintiffs Andrew Degan and Kailynne Degan, jointly referred to as "plaintiffs," bring this action against Five Star Dodge, Inc. ("Five Star"), and Capital One NA, Inc. ("Capital One"), jointly referred to as "defendants," alleging claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"); the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq. ("FBPA"); and the Georgia Uniform Commercial Code, O.C.G.A. § 11-2-608 ("UCC"); as well as a claim for breach of contract.  [Doc. 1].[1]  Defendants have moved for summary judgment on all of plaintiffs' claims, [Doc. 103], which plaintiffs oppose, [Doc. 111],

---

[1] The listed document and page numbers in citations to the record in this Final Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF, except that citations to deposition transcripts will also be cited according to the transcript page numbers.  Capital One asserts that it is properly known as Capital One Auto Finance, a division of Capital One, N.A. [Doc. 115 at 1].

and defendants have filed a reply in support of their motion, [Doc. 115].  For the reasons that follow, it is **RECOMMENDED** that defendants' motion for summary judgment, [Doc. 103], be **GRANTED**.

## I.   BACKGROUND

### A.   Preliminary Procedural Issues

"In this District, the process for separating disputed from undisputed material facts is governed by Local Rule 56.1(B)."  Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1347 (N.D. Ga. 2005), adopted at 1346; see also Dobson v. Fulton Cnty., CIVIL CASE NO. 1:19-cv-00902-ELR-RGV, 2020 WL 5549246, at *2 (N.D. Ga. July 9, 2020) (citation omitted), adopted by 2020 WL 5548771, at *7 (N.D. Ga. Aug. 31, 2020).  In compliance with Local Rule 56.1(B)(1), defendants, as movants, filed a statement of material facts, [Doc. 107-1], and plaintiffs have responded, [Doc. 111 at 2-8].[2]  Plaintiffs did not submit their own

---

[2] The Local Rules contemplate the movant for summary judgment filing a "motion and brief" and "a separate, concise, numbered statement of the material facts to which there is no genuine issue to be tried," and requires the nonmovant to respond to that statement while also permitting the nonmovant to "file a separate statement of additional facts which the nonmovant contends are material and present a genuine issue for trial." Circle Grp., L.L.C. v. Se. Carpenters Reg'l Council, 836 F. Supp. 2d 1327, 1349 (N.D. Ga. 2011) (citing LR 56.1(B), NDGa.). Some of plaintiffs' disputes fail to comply with the Court's Local Rules by failing to directly refute the fact with concise responses supported by specific citations to evidence that actually support their dispute.  See LR 56.1(B)(2)(a)(2), NDGa.

statement of disputed material facts which they contend preclude summary judgment as required by the Local Rules.  See LR 56.1(B)(2)(b), NDGa.[3]  The Court therefore accepts as undisputed those facts which the parties admit or have failed to properly dispute or deny.  See [Doc. 111 at 2-8, admitting or failing to properly dispute ¶¶ 1-36, 42-49 of defendants' statement, Doc. 107-1].  The Court, however, has omitted certain facts which are not material to the issues presented in the pending motion for summary judgment, were stated as an issue or legal conclusion, or were not supported by citations to evidence.  See LR 56.1(B)(1), (2)(a)(2), NDGa.  Nevertheless, as required on a motion for summary judgment, the Court construes the following pertinent facts in the light most favorable to plaintiffs as the non-moving parties.  Cotton v. Enmarket Inc, 809 F. App'x 723, 724 (11th Cir. 2020) (per curiam) (unpublished) (citation omitted); see also Whitehead v. BBVA Compass Bank, 979 F.3d 1327, 1328 (11th Cir. 2020) (citations

---

[3] Defendants also filed a reply to plaintiffs' response to defendants' statement of material facts.  [Doc. 115-1].  However, "Local Rule [56.1(B)] only authorizes a reply where a non-movant files a separate statement of additional facts with its response to the movant's statement of undisputed facts" and "does not allow for a reply in support of a statement of undisputed material facts without leave of the Court[.]"  Circle Grp., L.L.C., 836 F. Supp. 2d at 1350.  Accordingly, the Court will not consider defendants' reply in ruling on the pending summary judgment motion.

omitted); <u>Rose v. Wal-Mart Stores E., Inc.</u>, 631 F. App'x 796, 798 (11th Cir. 2015) (per curiam) (unpublished) (citation omitted).[4]

**B.**   **Statement of Facts and Procedural History**

On July 31, 2019, Five Star purchased a black 2016 Dodge Journey SUV ("the Journey") from Jerry Stutts ("Stutts"), who signed a power of attorney allowing Five Star to transfer the Journey's certificate of title on his behalf. [Doc. 105-4]. The vehicle was titled in Ohio and encumbered by a lien to Capital One. [Doc. 104-8; Doc. 105-3]. On August 16, 2019, plaintiffs entered into a Retail Installment Sales Contract ("the Contract") with Five Star and purchased the Journey. [Doc. 104-7]. Plaintiffs sought financing through Capital One, and pursuant to the terms of the Contract, plaintiffs paid no money down and agreed to pay $377.20 each month for 72 months. [Doc. 104-7 at 1; Doc. 116-3 (A. Degan Dep.) at 17 p. 17]. Five Star

---

[4] "In determining whether evidence creates a factual dispute, [the Court] draw[s] reasonable inferences in favor of the nonmoving party, but inferences based upon speculation are not reasonable." <u>Byrd v. UPS</u>, 814 F. App'x 536, 537 (11th Cir. 2020) (per curiam) (unpublished) (citation omitted). Additionally, "[t]he substantive law will identify which facts are material, and material facts are those which are key to establishing a legal element of the substantive claim which might affect the outcome of the case." <u>Campbell v. Shinseki</u>, 546 F. App'x 874, 877 (11th Cir. 2013) (per curiam) (unpublished) (citation and internal marks omitted); <u>see also</u> <u>Varnedoe v. Brennan</u>, CV418-067, 2021 WL 1115300, at *3 (S.D. Ga. Mar. 2, 2021) (citations omitted), adopted by 2021 WL 1112700, at *1 (S.D. Ga. Mar. 23, 2021), <u>aff'd</u>, No. 21-11186, 2022 WL 35614 (11th Cir. Jan. 4, 2022) (per curiam).

provided plaintiffs with a temporary tag for the Journey, and plaintiffs took possession of the Journey. [Doc. 116-3 at 18 p. 18].

That same day, Five Star paid off the balance Stutts owed to Capital One, [Doc. 105-12], and a few days later, Capital One "electronically requested that its lien on the Journey's title be removed from the Ohio [Bureau of Motor Vehicles ('BMV')] systems and requested that Ohio mail a physical title . . . to Five Star." [Doc. 107-1 ¶ 12 (footnote omitted); Doc. 105-10 at 3]. However, the Ohio title was lost in the mail, and on October 1, 2019, Five Star applied for a replacement title for the Journey by sending a title application to the Ohio BMV. [Doc. 105-5; Doc. 105-10 at 3; Doc. 105-14]. Because Stutts' power of attorney and the Journey's title had a name discrepancy, Five Star sent Stutts a title application directly that same day. [Doc. 105-4; Doc. 105-15]. Stutts returned the completed title application to Five Star on October 21, 2019, and it was transmitted to the Ohio DMV. [Doc. 105-16; see also [Doc. 107-1 ¶ 21 (footnote omitted)]. During the process of Five Star attempting to obtain a Georgia title for plaintiffs, plaintiffs sent Five Star a letter dated November 1, 2019, which stated, among other things, that plaintiffs were "canceling the sale and demanding a refund of all money paid to [Five Star] for the vehicle" based on Five Star's "failure to transfer ownership to them" of the Journey. [Doc. 104-1 at 2 (emphasis omitted)]. The duplicate title for the Journey

was issued by the Ohio BMV and sent to Five Star on November 12, 2019.  [Doc. 104-8].  On November 19, 2019, Five Star obtained a Georgia tag and title in plaintiffs' names for the Journey and immediately sent them to plaintiffs.  [Doc. 105-1; Doc. 105-2].  Plaintiffs received the Georgia tag and title on November 21, 2019.  [Doc. 116-3 at 40 p. 40].

Plaintiffs made two monthly payments on the Journey in September 2019 and October 2019, [Doc. 105-11; Doc. 116-3 at 21 p. 21; Doc. 116-4 (K. Degan Dep.) at 17 p. 17], and when plaintiffs stopped making payments, Capital One, as a matter of course, began reporting plaintiffs' auto loan as past due to the three major consumer credit reporting agencies ("CRAs"), [Doc. 116-2 (Vajala Dep.) at 7-8 pp. 6-7].  On January 20, 2020, plaintiffs began sending letters to the CRAs to dispute the reporting of their accounts.  [Doc. 115-4].  Plaintiffs sent a second set of dispute letters to the CRAs on February 19, 2020.  [Doc. 115-5].  After the majority of the letters were forwarded to Capital One, Capital One stated that it investigated the disputes and determined "that the disputed information was accurate as reported."  [Doc. 107-1 ¶ 37 (footnote omitted)]; see also [Doc. 115-4; Doc. 115-5].

On September 10, 2020, plaintiffs filed the instant action against Five Star, Capital One, Equifax Information Services, LLC ("Equifax"), Transunion, LLC

("Transunion"), and Experian Information Solutions, LLC ("Experian"),[5] alleging claims under the FCRA, the FBPA, and the UCC related to revocation of acceptance and for breach of contract. [Doc. 1].[6]  Defendants have filed a motion for summary judgment, [Doc. 103], which plaintiffs oppose, [Doc. 111]. Defendants have filed a reply in support of their motion, [Doc. 115], which is now ripe for ruling.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment shall be granted if the movant[s] show[] that there [are] 'no genuine issue[s] as to any material fact[s]', such that the movant[s are] entitled to judgment as a matter of law."  Jerome v. Barcelo Crestline, Inc., 507 F. App'x 861, 863 (11th Cir. 2013) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 56(a)); see also Mathews v. Wells Fargo, 758 F. App'x 842, 843 (11th Cir. 2019) (per curiam) (unpublished) (citation omitted); Holmes v. Ga. ex rel. Strickland, 503 F. App'x 870, 872 (11th Cir. 2013) (per curiam) (unpublished) (citations omitted); Young v. FedEx Express, 432 F. App'x 915, 916 (11th Cir. 2011) (per curiam)

---

[5] Transunion and Experian have since been dismissed from this action, see [Docs. 48 & 56; Docket entries dated 01/12/2021 & 01/28/2021], and plaintiffs have filed a notice of settlement as to Equifax, [Doc. 49].

[6] After filing this action, plaintiffs had the Journey towed to a Five Star location in Macon, Georgia, in April of 2021.  [Doc. 116-3 at 47-48; 116-4 at 28].

(unpublished) (citation omitted).  The parties moving for summary judgment bear the initial burden of demonstrating the absence of any genuine issue of material facts, upon which the non-moving parties must then submit specific facts showing a genuine issue for trial.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) (citation omitted); Premier Assocs., Inc. v. EXL Polymers, Inc., No. 1:08-cv-3490-WSD, 2010 WL 2838497, at *8 (N.D. Ga. July 19, 2010) (citations omitted), aff'd in part, 507 F. App'x 831 (11th Cir. 2013) (unpublished).

Parties "opposing a properly supported motion for summary judgment may not rest upon mere allegation[s] or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Jackson v. B & L Disposal, Inc., 425 F. App'x 819, 820 (11th Cir. 2011) (per curiam) (unpublished) (citation and internal marks omitted); see also Shuler v. Ingram & Assocs., 441 F. App'x 712, 715 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted); Bryant v. U.S. Steel Corp., 428 F. App'x 895, 897 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).  "Although [the Court] view[s] all the evidence and draw[s] all inferences in the light most favorable to the nonmoving part[ies], [i]f the non-moving part[ies] fail to make a showing on an essential element of [their] case with respect to which [they have] the burden of proof, then the entry

of judgment as a matter of law is appropriate." Lowe v. Exel, Inc., 758 F. App'x 863, 865 (11th Cir. 2019) (per curiam) (unpublished) (fifth alteration in original) (alteration, citations, and internal marks omitted).

"Speculation or conjecture cannot create a genuine issue of material fact." Shuler, 441 F. App'x at 715 (citation omitted); see also Perry v. Pediatrix Med. Grp. of Ga., 841 F. App'x 174, 177 (11th Cir. 2021) (per curiam) (unpublished) (citation omitted); Howard v. Or. Television, Inc., 276 F. App'x 940, 941 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); Goodman v. Ga. Sw., 147 F. App'x 888, 891 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal marks omitted) ("[A]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant[s], but an inference based on speculation and conjecture is not reasonable."). "Moreover, the non-moving part[ies] cannot create a genuine issue through evidence that is 'merely colorable' or 'not significantly probative.'" Morales v. Ga. Dep't of Human Res., 446 F. App'x 179, 181 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted); see also Hall v. Dekalb Cnty. Gov't, 503 F. App'x 781, 786 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted) ("[M]ere conclusions, unsupported factual allegations, and statements that are based on belief, as opposed to personal knowledge, are insufficient to overcome a summary judgment motion."); Brown v. Wrigley Mfg. Co., LLC, Civil

9

Action No. 2:18-CV-141-RWS, 2021 WL 1696384, at *2 (N.D. Ga. Mar. 29, 2021) (citation omitted) (explaining that "mere conclusions and unsupported statements by the party opposing summary judgment [were] insufficient to avoid summary judgment"). Indeed, "[t]o overcome a motion for summary judgment, the nonmoving part[ies] must present more than a scintilla of evidence supporting [their] position[s]–rather, there must be enough of a showing that the jury could reasonably find for th[ose] part[ies]." <u>Siddiqui v. NetJets Aviation, Inc.</u>, 773 F. App'x 562, 563 (11th Cir. 2019) (per curiam) (unpublished) (citation and internal marks omitted); <u>see also</u> <u>James v. City of Montgomery</u>, 823 F. App'x 728, 731 (11th Cir. 2020) (per curiam) (unpublished) (citation omitted); <u>Wesley v. Austal USA, LLC</u>, 776 F. App'x 638, 643 (11th Cir. 2019) (per curiam) (unpublished) (citation omitted); <u>Mazzola v. Davis</u>, 776 F. App'x 607, 609 (11th Cir. 2019) (per curiam) (unpublished) (citation omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," <u>Anyanwu v. Brumos Motor Cars, Inc.</u>, 496 F. App'x 943, 945-46 (11th Cir. 2012) (per curiam) (unpublished) (citation and internal marks omitted), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving part[ies], summary judgment for the moving part[ies] is proper," <u>Premier Assocs., Inc.</u>, 2010 WL 2838497, at *9

10

(first alteration in original) (citation and internal marks omitted); see also Ellison v. St. Joseph's/Candler Health Sys., Inc., 775 F. App'x 634, 643 (11th Cir. 2019) (unpublished) (citation omitted).  "Summary judgment is required where the non-moving part[ies'] response to [the] motion[s] is merely a repetition of [their] conclusory allegations and is unsupported by evidence showing an issue for trial."  Comer v. City of Palm Bay, 265 F.3d 1186, 1192 (11th Cir. 2001) (per curiam) (citation and internal marks omitted).

## III.   DISCUSSION

Plaintiffs allege claims under the FCRA, the FBPA, and the UCC, and for breach of contract.  [Doc. 1].  Specifically, plaintiffs claim that Capital One violated the FCRA when it published "representations to Equifax, Experian, and/or Trans Union and through Equifax, Experian, and/or Trans Union to all of [plaintiffs'] potential lenders on multiple occasions" despite having no "reasonable basis to believe that [ plaintiffs were] responsible for the account reported" in the representations it published, and despite having "substantial evidence by which to have verified that [ plaintiffs] had rescinded the underlying contract in [] this case[.]"  [Id. ¶¶ 101-02].  Plaintiffs claim that defendants violated the FBPA through their "acts and omissions," including:  knowing that plaintiffs "were entitled to revoke acceptance and intentionally represent[ing] that they could not

do so"; knowing that defendants "were required to convey title in thirty (30) days but [telling p]laintiffs it was permissible to do so more than ninety (90) days later"; knowing "it was illegal under both Georgia and military law for [ p]laintiffs to drive with dealer license plates, but offer[ing] them anyway"; knowing "that [p]laintiffs' revocation of acceptance severed [d]efendants power to convey title to [p]laintiffs, but convey[ing] title to [p]laintiffs anyway"; and refusing "to honor [p]laintiffs' revocation of acceptance."  [Id. ¶¶ 106, 108-11, 113].  Plaintiffs also contend that defendants "failed and refused to honor [ their] revocation of acceptance, in violation of OCGA § 11-2-608."  [Id. ¶ 120].  Finally, plaintiffs allege a breach of contract claim against defendants, stating that Five Star represented it "would convey title to the Journey . . within thirty (30) days of delivery of the Journey," failed to convey title within thirty days, failed to convey title before plaintiffs' revoked their acceptance, "refused to cancel the contract for the sale of the Journey, refused to accept tender of the Journey back to [Five Star], refused to return to [ plaintiffs] any monies paid for the Journey, and refused to grant [ plaintiffs] relief from future payments."  [Id. at ¶¶ 123-24, 126, 130].

Defendants make several arguments in support of their motion for summary judgment.  See [Doc. 103].  First, defendants assert that plaintiffs "may not revoke their acceptance because there was neither a breach of contract nor a

breach of warranty." [Id. at 16-25 (emphasis omitted)].  Defendants also argue that "Five Star [c]ured any [d]efect [w]hen [i]t [o]btained [t]itle for [ plaintiffs]." [Id. at 26-28 (emphasis omitted)].  Defendants next contend that "even if the purported revocation was effective, plaintiff[s' breach of] contract, []FBPA, and FCRA claims fail." [Id. at 28-41 (emphasis and all caps omitted)].  Specifically, defendants assert that "[p]laintiffs have presented no evidence of a breach of the contract," plaintiffs' deposition testimony indicates that Five Star made no representation that it would obtain a Georgia title for the Journey within thirty days, and even if Five Star had made such a representation, "it would not have been a part of the contract between the parties." [Id. at 28].   As for the FBPA claim, defendants argue that "[t]he [c]onduct at [i]ssue is a [r]egulated [a]ctivity [o]utside the [p]urview of the []FBPA" because it is "regulated by the laws and regulations of the State of Georgia and the United States," and further that plaintiffs have not incurred any actual damages as required for a claim under the FBPA. [Id. at 30-36 (emphasis omitted)]. Next, defendants contend that summary judgment should be granted on plaintiffs' FCRA claim against Capital One because "[p]laintiffs [f]ailed to [p]lead an [a]pplicable [v]iolation of the FCRA against [Capital One]." [Id. at 37-38 (emphasis omitted)].  Finally, defendants argue that plaintiffs have not established that they suffered any damages to maintain their claims. [Id. at 42-45].

In their response, plaintiffs argue that material facts remain to be determined by the jury regarding their revocation of acceptance, including whether the Journey was conforming and whether any nonconformity that existed devalued the Journey to plaintiffs. See [Doc. 111 at 12-14]. Next, plaintiffs assert that "[i]f [p]laintiffs' revocation of acceptance was valid, then the failure of [defendants] to honor it is an unfair and deceptive act in violation of the FBPA[,] but even if [p]lainitffs' revocation was not valid, issues of fact remain disputed that create colorable claims that [d]efendants violated [the] FBPA." [Id. at 14]. Specifically, plaintiffs argue that "a jury could find that it was unfair for Five Star not to submit an application for title, Georgia MV-1, within thirty (30) days of the sale." [Id. at 15].

In their reply brief, defendants point out that "plaintiffs' response fails to address the vast majority of defendants' motion." [Doc. 115 at 1 (emphasis and all caps omitted)]. Specifically, defendants assert that plaintiffs' response failed to address defendants' arguments that "[n]o breach of contract and no breach of warranty means no right to revoke acceptance," [id. at 2-3 (emphasis omitted)]; "[t]he Journey was not 'nonconforming goods' at the time of sale," [id. at 3-4 (emphasis omitted)]; "[d]efendants cured the purported defect," [id. at 4-5 (emphasis omitted)]; the FBPA claim is preempted by the FCRA "to the extent . . .

14

[it] is based on [Capital One's] actions in reporting the account to credit bureaus," [id. at 5]; the FBPA does not apply under the "[r]egulated activity exception to the []FBPA," [id. at 6 (emphasis and internal marks omitted)]; plaintiffs' lack of actual damages for their FBPA claim, [id. at 6-7]; plaintiffs' failure to "plead a privately actionable violation of the FCRA," [id. at 7 (footnote omitted)]; "[e]ven if [p]laintiffs had adequately alleged a claim under the FCRA, it must fail as a matter of law because the alleged inaccuracy was a legal dispute rather than a question of fact," [id. at 7-8 (footnote omitted)]; there was no willful FCRA violation to give rise to statutory or punitive damages, [id. at 8]; plaintiffs' "'money paid' damages are dramatically inflated," [id. at 8-9 (emphasis omitted)]; and "[p]laintiffs' 'emotional distress' claim is not supported by the record," [id. at 9-10 (emphasis omitted)]. Defendants argue that plaintiffs abandoned these claims by failing to defend them. [Id. at 10-11]. Additionally, defendants assert that "[p]laintiffs' [o]nly [d]efense of [t]heir [r]evocation [c]laim [a]ttacks an [a]rgument [d]efendants [h]ave [n]ot [m]ade." [Id. at 12-13 (emphasis omitted)]. In particular, defendants argue that while plaintiffs did address their revocation claim under the UCC, their "only argument relates to an issue (a subjective vs. objective reading of 'impaired value') which is immaterial to any of the arguments [d]efendants raised in their [m]otion." [Id. at 11]. Defendants also assert that the Motor Vehicle Certificate of

15

Title Act ("MVCTA") "comprehensively regulates the issuance of automobile titles in Georgia," and therefore, "[t]he []FBPA does not apply," and that regardless, "[f]ailing to [c]omply with MVCTA [r]egulations [d]oes [n]ot [v]iolate the []FBPA." [Id. at 14-16 (emphasis omitted)]. Finally, defendants argue that the FBPA notice plaintiffs sent to Five Star is not applicable to Capital One. [Id. at 16-19]. The Court will address each of these arguments.

A.    **FCRA Claim**

Plaintiffs allege Capital One violated the FCRA by publishing "representations to Equifax, Experian, and/or Trans Union and through Equifax, Experian, and/or Trans Union to all of [plaintiffs'] potential lenders on multiple occasions," and such publications were "willful and with malice," and "[a]s a result of [the] conduct, action and inaction of Capital One, [ plaintiffs] suffered damage . . . ." [Doc. 1 ¶¶ 101-03]. Plaintiffs contend that "Capital One did not have any reasonable basis to believe that [ plaintiffs were] responsible for the account reported in" the representations it published, and Capital One "had substantial evidence by which to have verified that [ plaintiffs] had rescinded the underlying contract in [] this case[.]" [Id. ¶ 102]. Defendants argue that "[p]laintiffs [f]ailed to [p]lead an [a]pplicable [v]iolation of the FCRA against [Capital One]." [Doc. 103 at 37-38 (emphasis omitted)]. Specifically, defendants

assert that the nature of plaintiffs' FCRA claim against Capital One is unclear; plaintiffs cannot (and do not appear to) raise a 15 U.S.C. § 1681s-2(b) claim despite its applicability to claims against furnishers; and there is no evidence to support a claim for a willful violation of the FCRA.  [Id. at 37-38, 41].  Because plaintiffs failed to address defendants' arguments regarding the FCRA claim against Capital One in their response to defendants' summary judgment motion, see [Doc. 111], the FCRA claim is deemed abandoned, Solloway v. White, CIVIL ACTION FILE NO. 1:13-CV-03827-TWT-WEJ, 2017 WL 1170895 at *34 (N.D. Ga. Feb. 15, 2017) (citations omitted) ("Claims that are alleged in a complaint but not addressed in response to a motion for summary judgment are deemed abandoned"), adopted by 2017 WL 1134460, at *1 (N.D. Ga. Mar. 27, 2017), aff'd, 738 F. App'x 985 (11th Cir. 2018) (per curium) (unpublished).  Moreover, for the reasons that follow, plaintiffs' FCRA claim against Capital One also fails on its merits. [7]

---

[7] Plaintiffs originally brought their FCRA claim against the CRAs and against Capital One.  See [Doc. 1 at 23-26].  Plaintiffs settled their FCRA claim against the CRAs, [Docs. 48, 49, & 56], and as defendants point out, plaintiffs' remaining FCRA claim is against Capital One, a furnisher, [Doc. 103 at 37].  However, as discussed hereinafter, plaintiffs have not asserted an FCRA claim under any provision that applies to a furnisher, see [Doc. 1 at 25-26 ¶¶ 100-04], and plaintiffs have failed to respond to any of defendants' arguments regarding the FCRA claim against Capital One.  In fact, plaintiffs' argument section of their response brief fails to mention the FCRA claim against Capital One at all.  See [Doc. 111 at 11-15].

The FCRA "governs the use and dissemination of consumer credit information." Meeks v. Murphy Auto Grp., Inc., No. 8:09-cv-1050-T-TBM, 2010 WL 5174525, at *7 (M.D. Fla. Dec. 15, 2010), aff'd, 441 F. App'x 683 (11th Cir. 2011) (per curiam) (unpublished). It requires a CRA[8] "to follow 'reasonable procedures to assure maximum possible accuracy' of the data within a consumer's credit report." Ryan v. Trans Union Corp., No. 99 C 216, 2000 WL 1100440, at *1 (N.D. Ill. Aug. 4, 2000) (quoting 15 U.S.C. § 1681e(b)). "In 1996, Congress amended the FCRA [by adding § 1681s-2] to impose duties upon persons who furnish information to [CRAs] . . . ."[9] Lofton-Taylor v. Verizon Wireless, Civil Action No. 05-0532-CG-B, 2006 WL 3333759, at *4 (S.D. Ala. Nov. 14, 2006) (last alteration in

---

[8] The FCRA defines a CRA as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

[9] "The term 'furnishers of information' is not specifically defined within the FCRA but generally includes any entity that reports information to a CRA which is relevant to a consumer's credit rating." Paredes v. Sallie Mae, Civil No. 11–2470 (NLH/KMW), 2011 WL 5599605, at *4 (D.N.J. Nov. 16, 2011) (footnote and citation omitted).

original) (citation and internal marks omitted), <u>aff'd</u>, 262 F. App'x 999 (11th Cir. 2008) (per curiam) (unpublished); <u>see also</u> <u>Jackson v. Genesys Credit Mgmt.</u>, No. 06-61500-CIV, 2007 WL 2113626, at *2 (S.D. Fla. July 23, 2007) (stating that 15 U.S.C. § 1681s-2 "is the only part of the FCRA that governs the duties of furnishers of information to the [CRAs]").

Under § 1681s-2(a), "the FCRA prohibits furnishers of credit information from providing false information." <u>Peart v. Shippie</u>, 345 F. App'x 384, 386 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted).  However, section 1681s-2(a) of the FCRA "explicitly bars private suits for violations of this provision," <u>Quale v. Unifund CCR Partners</u>, Civil Action No. 09-0519-CG-M, 2010 WL 1417903, at *4 (S.D. Ala. Jan. 29, 2010) (footnote and internal marks omitted) (quoting <u>Peart</u>, 345 F. App'x at 386), adopted by 2010 WL 1417907, at *1 (S.D. Ala. Mar. 30, 2010); <u>see also</u> <u>Green v. RBS Nat'l Bank</u>, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam) (unpublished); <u>Sylvester v. GE Capital Retail Bank</u>, No. 6:12–cv–341–Orl–31TBS, 2012 WL 3522691, at *2 (M.D. Fla. Aug. 14, 2012).  Thus, to the extent that plaintiffs assert a violation of section 1681s-2(a) by Capital One, their claim fails as a matter of law.  <u>See</u> <u>New v. CitiFinancial Auto Credit, Inc.</u>, No. 1:10–CV–905–WKW, 2012 WL 2415532, at *3 (M.D. Ala. June 26, 2012).

Unlike § 1681s-2(a), the remaining provision of the FCRA, § 1681s-2(b), may serve as the basis for a private suit where furnishers of credit information receive notice from a CRA that the consumer disputes the information.[10]   Id.; see also Green, 288 F. App'x at 642; Foxx v. Ocwen Loan Servicing, LLC, No. 8:11–CV–1766–T–17EAK, 2012 WL 2048252, at *5 (M.D. Fla. June 6, 2012).  Section 1681s-2(b) "requires individuals or entities who furnish information to [CRAs] to undertake a number of steps when they receive notice of a dispute."   McReynolds v. Ally Fin., No. 6:11–cv–56, 2011 WL 5358702, at *2 (S.D. Ga. Nov. 7, 2011).  "Such an individual or entity must conduct a[] [reasonable] investigation, review all of the relevant information the individual or entity provided to the [CRA], and report

---

[10] Because § 1681s-2(b) only requires furnishers of credit information such as Capital One to investigate the accuracy of reported information upon receiving a notice of a dispute from a CRA, see Peart, 345 F. App'x at 386 (citation omitted), any notices of a dispute that may have been sent by plaintiffs directly to Capital One are irrelevant for purposes of this action, see Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1106 (9th Cir. 2012) (citation omitted) (finding plaintiff's "direct complaint to Chase . . . would not have triggered any duty since it was unaccompanied by CRA notification"); Evans v. Gen. Elec. Co., No. CV611–110, 2012 WL 332446, at *1 (S.D. Ga. Feb. 1, 2012) (finding plaintiff "cannot backdoor a claim under § 1681s-2(a) through § 1681s-2(b)"), adopted by 2012 WL 566432, at *1 (S.D. Ga. Feb. 21, 2012); Groves v. U.S. Bank, No. 8:10–CV–2665–T–17TGW, 2011 WL 2192821, at *5 (M.D. Fla. June 6, 2011) (finding a plaintiff's direct dispute with a furnisher under § 1681s-2(a) "does not trigger the furnisher's duty under [§] 1681s-2(b)"); see also Bowman v. CitiMortgage, Inc., Civil Action No. 11–0047–KD–N, 2011 WL 2039576, at *3 (S.D. Ala. May 6, 2011), adopted by 2011 WL 2160043, at *1 (S.D. Ala. May 25, 2011).

the results of the investigation to the agency." Id. (citation omitted); see also

Howard v. Pinnacle Credit Servs., LLC, No. 4:09–CV–85 (CDL), 2010 WL 2600753,

at *3 (M.D. Ga. June 24, 2010).  Thereafter, "[a]dditional steps are required if the

individual or entity discovers the report to the agency to be false."  McReynolds,

2011 WL 5358702, at *2 (citation omitted).  Therefore, "to support an FCRA claim

against a furnisher of information, a private plaintiff must allege that the furnisher,

after receiving proper written notice of a dispute regarding the completeness or

accuracy of information provided by a person to a [CRA]," did one or more of the

following:

> (1) failed to conduct an investigation with respect to the disputed
> information; (2) failed to review all relevant information provided by
> the [CRA] pursuant to § 1681i(a)(2) of the FCRA; (3) failed to report
> the results of the investigation to the [CRA]; or, (4) if an item of
> information disputed by a consumer is found to be inaccurate,
> incomplete, or cannot be verified after any reinvestigation, failed to
> modify, delete, or permanently block the reporting of that item of
> information.

Howard v. DirecTV Grp., Inc., No. CV 109–156, 2012 WL 1850922, at *4 (S.D. Ga.

May 21, 2012) (citation omitted).

Because "[a] prerequisite for a claim under § 1681s-2(b) is that [Capital One],

as the furnisher of information, received notice of a dispute from [a CRA],"

Bosarge v. T-Mobile USA, Inc., Civil Action No. 07-0012-CG-C, 2008 WL 725017,

at *3 (S.D. Ala. Mar. 17, 2008) (citation omitted); Lofton-Taylor, 2006 WL 3333759,

at *5 (citations omitted); see also Restrepo v. Wells Fargo Bank, N.A., No. 09-22436-CIV, 2010 WL 374771, at * (S.D. Fla. Feb. 3, 2010) (citation omitted) ("The FCRA requires that a furnisher of credit information, such as Defendant, receive a notice of dispute from a [CRA] as a prerequisite to suit by a consumer."); Abbett v. Bank of Am., 3:04CV 01102 WKW VPM, 2006 WL 581193, at *3 (M.D. Ala. Mar. 8, 2006) ("To prevail on a § 1681s-2(b) claim, [plaintiff] must show that a CRA notified the furnisher of information about the consumer's dispute pursuant to § 1681i(a)(2). This notice triggers the furnisher's duties under § 1681s-2(b)."), but plaintiffs "point[] to no evidence tending to prove that [Capital One] received notice of a dispute from a [CRA]," Young v. Equifax Credit Info. Servs., Inc., 294 F.3d 631, 640 (5th Cir. 2002), plaintiffs have failed to present evidence to support their FCRA claim against Capital One.   Indeed, plaintiffs neglect to cite to any provision of the FCRA that they believe Capital One violated, and instead focus their argument on what they call "the Defamation" – representations they allege Capital One published to the CRAs and through the CRAs "just prior to January 22, 2020." [Doc. 1 ¶¶ 101-02].  However, their claim appears to be based on plaintiffs' belief that they "had rescinded the underlying contract in [] this case," [id. ¶ 102], and as will be discussed hereinafter, plaintiffs did not lawfully rescind the Contract because the Journey conformed to the terms of the Contract.  Accordingly, it is

**RECOMMENDED** that defendants' motion for summary judgment on plaintiffs' FCRA claim be **GRANTED**.

**B.**   **State Law Claims**

Plaintiffs' complaint includes state law claims under the FBPA, the UCC, and for breach of contract.  [Doc. 1 at 26-32 ¶¶ 105-31].  Although supplemental jurisdiction may be exercised over state law claims related to federal claims in any action in which the Court has original jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote and citation omitted); Scarfo v. Ginsberg, 175 F.3d 957, 962 (11th Cir. 1999); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) (per curiam) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3).").

Since summary judgment is due to be granted on plaintiffs' only federal claim, the Court need not exercise supplemental jurisdiction over plaintiffs' state law claims against defendants.  Ingram v. Sch. Bd. of Miami-Dade Cnty., 167 F. App'x 107, 108 (11th Cir. 2006) (per curiam) (unpublished); see also Anderson v.

23

<u>Dunbar Armored, Inc.</u>, 678 F. Supp. 2d 1280, 1327 (N.D. Ga. 2009) ("In this case, the state law claims are best left for the Georgia courts."), adopted at 1290. However, should the District Judge elect to retain jurisdiction, it is recommended that summary judgment be granted on each state law claim as well for the reasons that follow.

1. *Revocation of Acceptance*

Plaintiffs assert that "[t]he gist of this case is a dispute about whether and when revocation of acceptance occurred," [Doc. 111 at 12], and therefore, the Court will begin its analysis of plaintiffs' state law claims with plaintiffs' claim under the UCC based on revocation of acceptance (Count III of plaintiffs' complaint), because plaintiffs' other claims are contingent on plaintiffs' alleged revocation of acceptance.  Plaintiffs allege that "[d]efendants failed and refused to honor [ their] revocation of acceptance, in violation of OCGA § 11-2-608."  [Doc. 1 ¶ 120]. Defendants argue that plaintiffs' "purported revocation of acceptance was invalid and ineffective[, and] without a valid revocation, plaintiffs' claims fail."  [Doc. 103 at 16 (emphasis and all caps omitted)].  Specifically, defendants argue that the Journey was not "nonconforming goods," so plaintiffs were not authorized to revoke their acceptance.  [<u>Id.</u> (internal marks omitted)].  Defendants point to <u>Whitehead v. John Bleakley RV Ctr., Inc.</u>, Civil Action File No. 109-CV-468-TWT,

2010 WL 925091, at *8 (N.D. Ga. Mar. 8, 2010), where the court looked "to the terms of the contract and to the law of warranty" to determine whether goods were nonconforming, id. (citation and internal marks omitted), and argue that because "there has been neither a breach of contract nor a breach of warranty by [d]efendants," the Journey was not "nonconforming goods," and O.C.G.A. § 11-2-608 does not apply, [Doc. 103 at 16-17 (internal marks omitted)]. Plaintiffs respond that material facts remain to be determined by the jury with respect to their revocation of acceptance claim, including whether the Journey was "nonconforming goods" and whether any nonconformity that existed devalued the Journey to plaintiffs. See [Doc. 111 at 12-14]. In their reply brief, defendants point out that plaintiffs did not address their arguments that "[n]o breach of contract and no breach of warranty means no right to revoke acceptance," [Doc. 115 at 2-3 (emphasis omitted)], and "[t]he Journey was not 'nonconforming goods' at the time of sale," [id. at 3-4 (emphasis omitted)].

In Georgia, a "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it" either "(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of

discovery before acceptance or by the seller's assurances." O.C.G.A. § 11-2-608(1).

"Revocation of acceptance must occur within a reasonable time after the buyer

discovers or should have discovered the ground for it and before any substantial

change in condition of the goods which is not caused by their own defects," and

"[i]t is not effective until the buyer notifies the seller of it." O.C.G.A. § 11-2-608(2).

"Goods or conduct including any part of a performance are conforming or

conform to the contract when they are in accordance with the obligations under

the contract." Esquire Mobile Homes v. Arrendale, 356 S.E.2d 250, 252 (Ga. Ct.

App. 1987) (internal marks omitted) (quoting O.C.G.A. § 11-2-106(2)).[11]

Plaintiffs entered into the Contract with Five Star to purchase the Journey

on August 16, 2019. [Doc. 104-7]. The Contract specifies the make, model, year,

and vehicle identification number of the Journey, and the payment schedule to

which plaintiffs agreed. [Id. at 1]. The Contract states that "[u]nless [Five Star]

makes a written warranty, . . . [Five Star] makes no warranties, express or implied,

on the vehicle, and there will be no implied warranties of merchantability or of

fitness for a particular purpose." [Id. (emphasis omitted)]. The Contract also has

a section entitled "NO COOLING OFF PERIOD," which states that "[s]tate law

---

[11] Black's Law Dictionary defines "nonconforming goods" as "[g]oods that fail to
meet contractual specifications, allowing the buyer to reject the tender of the goods
or to revoke their acceptance." Black's Law Dictionary 1931 (11th ed. 2019).

does not provide for a 'cooling off' or cancellation period for this sale.  After you sign this contract, you may only cancel it if the seller agrees or for legal cause.  You cannot cancel this contract simply because you change your mind."  [Id. (emphasis omitted)].   The Contract also contains a merger clause, which states that the Contract "contains the entire agreement between [Five Star and plaintiffs] relating to this contract.  Any change to this contract must be in writing and we must sign it.  No oral changes are binding."  [Id.].  The Contract does not contain a promise by Five Star to obtain a Georgia title in plaintiffs' name within thirty days. Notably, the Contract does not contain a provision requiring Five Star to obtain a Georgia title at all.  As defendants correctly point out, [Doc. 103 at 20], the only mention of a title in the Contract is plaintiffs' obligation to "make sure the title shows [Five Star's] security interest (lien) in the vehicle" and to "not allow any other security interest to be placed on the title without [Five Star's] written permission," [Doc. 104-7].

Plaintiffs' contention that the Journey was "nonconforming goods" rests on defendants' obligation under the MVCTA to apply for a Georgia certificate of title for the Journey.  Because plaintiffs argue that defendants were unable to apply for the title within the thirty days required under O.C.G.A. § 40-3-33(c), the Journey lacked a Georgia title, and thus the Journey was "nonconforming goods."  See

[Doc. 1 ¶ 119]; see also [Doc. 104-1 at 2 (emphasis omitted) (plaintiffs' letter to Five Star dated November 1, 2019, which stated, among other things, that plaintiffs were "canceling the sale and demanding a refund of all money paid to [Five Star] for the vehicle" based on Five Star's "failure to transfer ownership to them" of the Journey)]. However, plaintiffs are conflating ownership of the Journey with the issuance of the certificate of title.

The MVCTA, O.C.G.A. § 40-3-1 et seq., is a recording statute, and its "purpose is to perfect and give notice of security interests, [which] . . . does not affect the creation of [a property or] security interest, which remains a matter of contract between the parties." State v. Banks, 452 S.E.2d 533, 535 (Ga. Ct. App. 1994) (second and third alterations in original) (emphasis, citation, and internal marks omitted). The MVCTA "recognizes that, between a buyer and seller, ownership to an automobile may pass before the buyer obtains the certificate of title." West v. Vill. Ford-Mercury, 567 S.E.2d 355, 358 (Ga. Ct. App. 2002) (footnote omitted). "[A]s between the parties[,] an ownership may change hands without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser." Right Touch of Class v. Superior Bank, 536 S.E.2d 181, 183 (Ga. Ct. App. 2000) (first and second alterations in original) (citations and internal marks omitted) (finding "[t]he fact that [buyer one] did not obtain the

certificate of title did not deprive it of title in the car or prevent it from transferring title to [buyer two]"). "The certificate is not the title or ownership itself but only evidence of it." <u>Vill. Ford-Mercury</u>, 567 S.E.2d at 358 (internal marks omitted). "Under these circumstances, the alleged delay in obtaining or applying for the certificate of title or tag did not affect the ownership transfer." <u>Id.</u>

Plaintiffs' argument regarding their revocation of acceptance is premised on whether a nonconformity subjectively devalued the Journey. <u>See</u> [Doc. 111 at 9, 12-13]. Plaintiffs seem to recognize that in order to prevail on their claims premised on revocation of acceptance of the Journey, they must show that the Journey was "nonconforming goods," <u>see</u> [Doc. 111 at 12], but instead, plaintiffs focus their argument on explaining why the delay in obtaining the title for the Journey "substantially impaired the value to them," <u>see</u> [id. at 12-13]. Specifically, plaintiffs state that, as a military family, they "bought the vehicle assuming that they would be able to use it on the military installation where they live and work." [<u>Id.</u> at 13 (footnote omitted)]. While it is true that a "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him . . . ," there must be a nonconformity that supports revocation of acceptance under Georgia law, and here, there is no such nonconformity. <u>See</u> O.C.G.A. § 11-2-608(1). As mentioned previously, the Contract contained no

representation by Five Star that it would obtain a Georgia title for the Journey, let alone within thirty days. <u>See</u> [Doc. 104-7]. Additionally, there was no defect at the time of sale when ownership of the Journey was transferred to plaintiffs. <u>See</u> [Doc. 103 at 25; Doc. 115-7 (A. Degan Dep.) at 18 p. 18 (testifying that the vehicle itself "was a good car" and other than the certificate of title issue, he never had any concerns with the vehicle as purchased)]. Accordingly, plaintiffs have failed to show that there was a lawful basis for their purported revocation of acceptance of the Journey.

Even if the Journey was determined to be "nonconforming goods" when plaintiffs purchased it, defendants contend that plaintiffs did not give Five Star a reasonable opportunity to cure the defect before revoking their acceptance.[12]  In <u>CAR Transp. Brokerage Co. v. John Bleakley R.V. Ctr., Inc.</u>, CIVIL ACTION FILE NUMBER 1:06-cv-1728-TCB, 2008 WL 11416958 at *9 (N.D. Ga. Sep. 25, 2008), <u>aff'd</u>, 322 F. App'x 891 (11th Cir. 2009) (per curium) (unpublished), the court

---

[12] As defendants acknowledge in their summary judgment brief, [Doc. 103 at 26], whether an opportunity to cure is required under Georgia law is unsettled, but the requirement has been applied by at least one court in this district, as discussed hereinafter.  While it may be the minority view, an opportunity to cure seems to find support in the statutory language of O.C.G.A. § 11-2-608(1), which allows a buyer to revoke his acceptance of a good "whose nonconformity substantially impairs its value to him if he has accepted it: (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured. . . ."

acknowledged "the requirement of Georgia law that before a buyer may bring a revocation claim, it must give the seller an opportunity to cure all known defects," id. Here, plaintiffs notified Five Star on November 1, 2019, that they were revoking their acceptance of the Journey. [Doc. 104-1 at 2]. Immediately after the sale of the Journey to plaintiffs, Five Star began the process for transfer of the title, pursuing alternative means of obtaining the title from the Ohio DMV after the title was lost in the mail, and less than two weeks after plaintiffs sent their letter, the duplicate title for the Journey was issued by the Ohio BMV and sent to Five Star on November 12, 2019. See [Doc. 104-8; Doc. 105-4; Doc. 105-10 at 3; Doc. 105-12; Doc. 105-14; Doc. 105-15; Doc. 105-16]. As soon as Five Star received the Georgia tag and title for the Journey in plaintiffs' names on November 19, 2019, Five Star immediately sent them to plaintiffs, who received the Georgia tag and title on November 21, 2019, three weeks after plaintiffs sent the letter to Five Star revoking their acceptance of the Journey. [Doc. 105-1; Doc. 105-2; Doc. 116-3 at 40 p. 40]. Thus, the undisputed evidence of record reflects that Five Star promptly followed the process for obtaining the certificate of title upon the sale of the Journey, and when the title was lost in the mail, made every reasonable effort to obtain a Georgia tag and title for plaintiffs before and after plaintiffs sent notice of revocation, and delivered the certificate of title within three weeks of receiving the

notice of revocation.  Accordingly, even if the Journey was determined to be nonconforming goods due to the delay in obtaining the tag and title, the undisputed evidence of record establishes that Five Star cured the defect in a timely manner within three weeks of receiving notice from plaintiffs.  See CAR Transp. Brokerage Co., 2008 WL 11416958 at *8-9 (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1199 (N.D. Ga. 2005) (holding that "no reasonable juror could conclude that the [six month] period of time over which these problems were addressed by the Dealership, or the number of times the Dealership attempted to repair these problems, was unreasonable.")).  For all the foregoing reasons, it is **RECOMMENDED** that defendants' motion for summary judgment on plaintiffs' UCC claim based on revocation of acceptance be **GRANTED**.

### 2.    *FBPA Claim*

Plaintiffs allege that "[d]efendants' acts and omissions" constituted violations of the FBPA.  [Doc. 1 ¶ 106].  Specifically, plaintiffs claim that defendants violated the FBPA through "acts and omissions," including:  knowing that plaintiffs' "were entitled to revoke acceptance and intentionally represent[ing] that they could not do so"; knowing that defendants "were required to convey title in thirty (30) days but [telling p]laintiffs it was permissible to do so more than

ninety (90) days later"; knowing "it was illegal under both Georgia and military law for [ p]laintiffs to drive with dealer license plates, but offer[ing] them anyway"; knowing "that [p]laintiffs' revocation of acceptance severed [d]efendants power to convey title to [p]laintiffs, but convey[ing] title to [p]laintiffs anyway"; and refusing "to honor [p]laintiffs' revocation of acceptance." [Id. ¶¶ 106, 108-11, 113].

Defendants first argue that plaintiffs failed to send Capital One the pre-litigation notice required under the FBPA. [Doc. 103 at 29-30]. Next, defendants argue that "[t]he conduct alleged in the [c]omplaint is regulated by the laws and regulations of the State of Georgia and the United States," and thus the FBPA does not apply. [Id. at 32]. Specifically, defendants point out that they "are accused of not providing [ plaintiffs] with title to the Journey until after the temporary tag had expired," but "[b]y [p]laintiffs' own admission, [] the provision of vehicle titles by automobile dealers is quite well-regulated by the State of Georgia," including O.C.G.A. § 40-3-33(c). [Id. at 31]. Additionally, defendants argue that to the extent the conduct at issue arises from credit reporting, plaintiffs' FBPA claim is preempted by the FCRA. [Id. at 33-35]. Finally, defendants assert that plaintiffs' have failed to allege any damages to support a claim under the FBPA. [Id. at 35-36].

In response, plaintiffs argue that defendants' failure to honor their revocation of acceptance "is an unfair and deceptive act in violation of the FBPA[.]" [Doc. 111 at 14]. Plaintiffs also argue that they "can maintain the FBPA claim even if revocation was ineffective because a jury could find that it was unfair for Five Star not to submit an application for title, Georgia MV-1, within thirty (30) days of the sale." [Id. at 15]. Additionally, plaintiffs argue that Capital One "received a copy of the ante-litem notice sent to Five Star," and "[p]laintiffs can bring the same claims and defenses against [Capital One] that they can bring against Five Star pursuant to the FTC Holder rule." [Id.].

In their reply brief, defendants again reiterate that automobile titling is a regulated activity outside the reach of the FBPA, [Doc. 115 at 14-15], and failure to comply with MVCTA regulations does not violate the FBPA, [id. at 15-16]. Finally, defendants argue that plaintiffs' FBPA notice to Five Star is not applicable to Capital One because, "[i]n order to sue [Capital One] under the []FBPA, [p]laintiffs are required to send [Capital One] a pre-litigation notice which meets the requirements of O.C.G.A. § 10-1-399(b)," which plaintiffs failed to do, and "[p]laintiffs have cited no authority whatsoever supporting a proposition that the Holder Rule relieves them of the obligation to comply with the []FBPA's notice requirements." [Id. at 16-19].

34

The FBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce . . . ." O.C.G.A. § 10-1-393(a).  The FBPA, however, exempts from its scope "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States."  O.C.G.A. § 10-1-396(1).  In Grammer v. Ferlin, No. 2:19-CV-157, 2020 WL 6365455 at *4 (S.D. Ga. Oct. 29, 2020), the court discussed the two main approaches that courts applying Georgia law have taken "in determining the expanse of the FBPA exemption."  Id.  "One line of cases employs a broad interpretation of the FBPA exemption, holding that any transaction occurring within a regulated area of activity is exempt from the FBPA."  Id. (citations omitted).  "Another line of cases . . . favors a narrow interpretation of the FBPA exemption, holding that the FBPA exempts only specific conduct that is subject to state or federal regulations." Id. at *5 (emphasis and citations omitted).  The Grammer court observed that "[i]n short, the broad interpretation of the FBPA exemption asks whether the type of transaction at issue is regulated, while the narrow interpretation asks whether the specific conduct alleged is regulated."  Id. (emphasis omitted).

Here, the FBPA exemption applies regardless of which interpretation is used.  "The manifest purpose of the [MVCTA] was to provide a comprehensive

system, with few specific exceptions, for central recordation of ownership, security interests and liens in all motor vehicles registered and regularly in use in this State." First Nat'l Bank & Tr. Co. v. Smithloff, 167 S.E.2d 190, 195 (Ga. Ct. App. 1969) (citations omitted). O.C.G.A. § 40-3-33 requires a dealer to "submit a properly completed certificate of title application and proper supporting documents to the commissioner or to the appropriate authorized county tag agent . . . within 30 days from the date of the transfer of the vehicle." O.C.G.A. § 40-3-33(c). "If the application and supporting documents are not submitted within that time, the dealer shall be required to pay a penalty of $10.00 in addition to the ordinary title fee . . . ." Id. Additionally, "[t]he willful failure of a dealer to obtain a certificate of title for a purchaser shall be grounds for suspension or revocation of the dealer's state issued license and registration for the sale of motor vehicles." Id.

Under the broader interpretation of the FBPA exemption, which finds "any transaction occurring within a regulated area of activity [] exempt from the FBPA," Grammer, 2020 WL 6365455 at *4 (citations omitted), the sale of the Journey to plaintiffs unquestionably falls under the purview of the MVCTA. Under the narrower interpretation of the FBPA exemption, which finds "the FBPA exempts only specific conduct that is subject to state or federal regulations," id. at *5

(emphasis and citations omitted), the MVCTA clearly regulates the exact situation that occurred here: Five Star's delay in submitting the application for a Georgia title and tag for the Journey.  Accordingly, plaintiffs' claim is exempt from the FBPA, and it is **RECOMMENDED** that defendants' motion for summary judgment on plaintiffs' FBPA claim be **GRANTED**.[13]

### 3.    *Breach of Contract Claim*

Plaintiffs allege that Five Star represented that it "would convey title to the Journey to [ plaintiffs] within thirty (30) days of delivery of the Journey" but failed to do so.  [Doc. 1 ¶ 123].  Defendants argue that plaintiffs' "deposition testimony indicates that no such representation was made," and "even if it had been, it would not have been a part of the contract between the parties."  [Doc. 103 at 28].  Because plaintiffs failed to address defendants' arguments regarding the breach of contract claim in their response to defendants' summary judgment motion, see [Doc. 111], the breach of contract claim is deemed abandoned.  Solloway, 2017 WL 1170895 at *34 (citations omitted) ("Claims that are alleged in a complaint but not addressed in response to a motion for summary judgment are deemed abandoned").  Moreover, plaintiffs' breach of contract claim also fails on its merits.  Even if Five

---

[13] Since plaintiffs' claim falls within the exemption, the Court does not address the other arguments advanced by defendants in support of their motion for summary judgment on the FBPA claim.

Star had represented it would convey title to the Journey within thirty days (which plaintiffs' deposition testimony indicates never occurred, see [Doc. 116-3 at 17-18 pp. 17-18; Doc. 116-4 at 14 p. 14]), such representation would not have been part of the Contract because the Contract contains a merger provision which states that the Contract "contains the entire agreement between [Five Star and plaintiffs] relating to this contract," [Doc. 104-7 at 1]; see also Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011) (citation omitted) (stating that "[w]here a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract); Conway v. Romarion, 557 S.E.2d 54, 58 (Ga. Ct. App. 2001) (emphasis, citation, and internal marks omitted) (stating that "[a] merger clause . . . prevents a party from claiming reliance upon a representation not contained in the contract").   Since the undisputed evidence of record reveals that the representation plaintiffs rely upon for their breach of contract claim was not part of the Contract, their claim necessarily fails.  Am. Casual Dining, Ltd. P'ship v. Moe's Sw. Grill, L.L.C., 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) (breach of contract claim failed when the plaintiff could not point to any contractual provision that defendant breached). Accordingly, it is **RECOMMENDED** that defendants' motion for summary judgment on plaintiffs' breach of contract claim be **GRANTED**.

38

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that defendants' motion

for summary judgment, [Doc. 103], be **GRANTED**.

The Clerk is **DIRECTED** to terminate this referral.

**IT IS SO RECOMMENDED** and **DIRECTED** this 9th day of December,

2022.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE